UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

SHIRLEY SHAHEEN,

                 Plaintiff,

v.

THE WELLPOINT COMPANIES, INC.,

                 Defendant.

Civil Action No. 3:11–CV–077

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment (ECF No. 19), Plaintiff's Motion to Compel (ECF No. 21), and Defendant's Motion to Schedule Trial After June 1, 2012 (ECF No. 33). For the reasons stated below, the Court GRANTS Defendant's Motion for Summary Judgment, and DENIES AS MOOT Plaintiff's Motion to Compel and Defendant's Motion to Schedule Trial After June 1, 2012.

**I.**    **BACKGROUND**

**a.**    **Factual Background**

In March 2004, Plaintiff Shirley Shaheen began working as a part-time nurse consultant for Defendant The WellPoint Companies ("WellPoint" or the "company"). As a nurse consultant, Plaintiff worked on WellPoint's NurseLine, "a 24/7 call-in operation designed to provide quick and immediate advice from nurse associates to insureds of Anthem Blue Cross Blue Shield (a WellPoint subsidiary)." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 3). In March 2006, WellPoint promoted Plaintiff to NurseLine manager, which made her one of five managers responsible for supervising approximately twenty

1

NurseLine associates. As a NurseLine manager, Plaintiff was also responsible for disciplining the associates when appropriate.

On September 11, 2010, an incident arose between Plaintiff and a NurseLine associate, Linda Taylor. According to Plaintiff, she asked Taylor to switch cubicles to one with a "Click-to-Talk" extension, which Taylor needed to perform her job. Taylor got frustrated when Plaintiff asked her to move, and there was an exchange of words. Plaintiff contends that at some point during the exchange, Plaintiff asked Taylor, "[I]s it really an ordeal to move?" And Taylor responded, "[I]t f--king is." (*See* Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 6).

A few days later, Plaintiff attended an online "manager's offsite" conference. Other NurseLine managers and certain WellPoint personnel also attended the online conference, including Kelli Lohmeyer, Director of the NurseLine; and Whitney Ingle, the WellPoint Human Resources representative for the NurseLine. During the conference, Plaintiff informed Lohmeyer and Ingle of her encounter with Taylor. Based on Plaintiff's account of the exchange including Taylor's use of the "F-word," Lohmeyer and Ingle informed Plaintiff that Taylor's behavior was grounds for termination. They instructed Plaintiff to submit a written description ("memo") of the incident, in which Plaintiff stated that during the September 11 exchange Taylor "responded in a verbally hostile matter," used the "F-word," and that at least two other NurseLine associates witnessed the exchange. (*See* Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. Ex. 1, at 5). Plaintiff also stated that a third associate was in the area and may have witnessed the exchange.

On September 17, 2010, Plaintiff and another NurseLine manager, Barbara Wetzler, called Taylor and informed Taylor that her employment was terminated. Pursuant to

instructions received from Lohmeyer and Ingle, Shaheen read directly from the memo and informed Taylor that her termination was based on Taylor's conduct during the September 11 incident. Shortly thereafter, Taylor contacted Ingle to dispute the basis of her termination and denied that she used the "F-word" during her exchange with Plaintiff.

Lohmeyer and Ingle decided to open an investigation into the exchange between Plaintiff and Taylor. They contacted the witnesses that Plaintiff alleged could verify her version of the incident. Contrary to Plaintiff's initial account and memo, no witnesses were able to verify the incident as Plaintiff presented it. Furthermore, the third associate that Plaintiff claimed may have overheard the exchange between Plaintiff and Taylor was not at work the night of the incident. Lohmeyer and Ingle decided to meet with Plaintiff again to resolve the discrepancies between Plaintiff's original report and the witnesses' accounts.

On October 13, 2010, Lohmeyer and Ingle met with Plaintiff and asked her to provide a verbatim account of the September 11 incident. Lohmeyer and Ingle asked Plaintiff why no other employees overheard the exchange and why no one could attest to the incident specifically as Plaintiff recalled it. Lohmeyer and Ingle also questioned why Plaintiff's account seemed inconsistent at times. Plaintiff wavered on the details of the incident, specifically as it related to whether Taylor used the "F-word" during their exchange, and suggested the possibility that the witnesses just did not hear the whole exchange even though they were in the area. (Pl.'s Dep. 165:1-23, Aug. 3, 2011; Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. ¶ 44).

On October 15, 2010, Lohmeyer and Ingle informed Plaintiff that they believed she "misrepresented the severity of the situation" between her and Taylor. They also informed Plaintiff that her employment was being terminated and Taylor's employment was being

3

reinstated. Lohmeyer and Ingle noted "misconduct" as the reason for termination in Plaintiff's personnel file.

Plaintiff alleges that Lohmeyer and Ingle's statements to her on October 13 and October 15 and those noted in her personnel file in connection with her termination constitute defamation and defamation *per se*. Plaintiff bases her claim on the following six "statements" by Defendant: (1) Defendant's statements during its October 13 and 15 meetings with Plaintiff that she misrepresented and lied about the facts related to the incident between her and Taylor; (2) Defendant's statement during its October 15 meeting with Plaintiff that she "misrepresented the severity" of Taylor's conduct; (3) Defendant's note in Plaintiff's personnel file that the reason for her termination was "misconduct"; (4) Defendant's statement that Plaintiff violated WellPoint's ethics policy by misrepresenting facts related to a company investigation; (5) Lohmeyer's statement in an email to Ingle that Plaintiff did not offer any alternatives to terminating Taylor; and (6) Lohmeyer's statement in an email to Ingle that Plaintiff decided to terminate, or recommended termination for, Taylor. (*See* Pl.'s Supp. Resps. Def.s' First Set Interrogs. 3).

**b.    Procedural Background**

On February 1, 2011, Plaintiff Shaheen filed this diversity action against Defendant WellPoint for defamation and defamation *per se* (Count I) and breach of contract (Count II). On Count I, Plaintiff requested $10,000,000 in compensatory damages, $350,000 in punitive damages, and pre-judgment interest. On Count II, Plaintiff requested $185 in compensatory damages and pre-judgment interest.

On September 2, 2011, the parties entered a joint stipulation to dismiss the breach of contract claim. (ECF. No. 18). That same day, Defendant filed the instant summary

4

judgment motion, and Plaintiff filed the instant motion to compel. On September 20, 2011, the parties jointly moved to continue the two-day jury trial previously set in this case to begin Wednesday, October 12, 2011. The Court granted the motion to allow the parties additional time to depose each other's expert witnesses. On October 11, 2011, Defendant filed the instant motion to schedule the trial in this case to a date after June 1, 2012.

## II.     LEGAL STANDARD

A motion for summary judgment lies only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted). In making its decision, a court must look to the affidavits or other specific facts pled to determine whether a triable issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1996). Where there is no genuine dispute as to any material fact, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006). Summary judgment should not be granted, however, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 258.

Since the case arises under the Court's diversity jurisdiction, the Court applies its own federal procedural rules, but yields to the state substantive law under which Plaintiff's claim arises. *Universal Concrete Prods. Corp. v. Turner Constr. Co.*, 595 F.3d 527, 529 (4th Cir. 2010) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Therefore, the Court must look to Virginia state law to evaluate Plaintiff's defamation and defamation *per se* claim. *See Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999).

### III.　DISCUSSION

To establish defamation under Virginia law, a plaintiff must demonstrate (1) publication of, (2) an actionable statement with, (3) the requisite intent. *Chapin v. Greve*, 787 F. Supp. 557, 562 (E.D. Va. 1992), *aff'd sub nom. Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). To prove that a statement is actionable, a defamation plaintiff must show by a preponderance of the evidence not only that the statement is false, *Jordan v. Kollman*, 269 Va. 569, 576 (2005), but also defamatory, that is, it must "tend so to harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her]." *Chapin*, 993 F.2d at 1092. The statement must rise above the level of being "merely offensive or unpleasant" and must "make the plaintiff appear odious, infamous, or ridiculous." *Id*. Furthermore, if the statement is a pure expression of opinion—"speech which does not contain a provably false factual connotation, or . . . which cannot reasonably be interpreted as stating actual facts about a person"—it is not actionable as defamation. *Yeagle v. Collegiate Times*, 255 Va. 293, 295 (1998). Ultimately, if the statement at issue is objectively true, not defamatory, or a protected expression of opinion, there is no actionable defamation. *Am. Commc'ns Network, Inc. v. Williams*, 264 Va. 336, 341 (2002). Whether a statement is actionable is a matter of

law to be determined by the Court. *See Yeagle v. Collegiate Times*, 255 Va. 293, 296 (1998) (citing *Chaves v. Johnson*, 230 Va. 112, 119 (1985)).

The publication element for defamation requires a dissemination of the statement to a third party outside of a privileged context. *See Montgomery Ward & Co. v. Nance*, 165 Va. 363, 379 (1935). In this regard, it is well settled under Virginia law that "communications between persons on a subject in which the persons have an interest or duty" and "statements made between co-employees and employers in the course of employee disciplinary or discharge matters" are privileged. *Larimore v. Blaylock*, 259 Va. 568, 572 (2000); *Southeastern Tidewater Opportunity Project, Inc. v. Bade*, 246 Va. 273, 275-76 (1993). While the privilege applies broadly to statements with respect to "employment matters," it is not absolute and "is lost if defamatory statements are communicated to third parties who have no duty or interest in the subject matter, even if those third parties are fellow employees." *Larimore*, 259 Va. at 574-75.

It is also well settled that the privilege is lost "if a plaintiff proves by clear and convincing evidence that the defamatory words were spoken with common-law malice." *Southeastern Tidewater,* 246 Va. at 276 (citing *Smalls v. Wright*, 241 Va. 52, 55 (1991)); *see also Larimore,* 259 Va. at 575 ("The rule of qualified privilege that we adopted years ago continues to encourage open communications on matters of employment while not shielding the use of such communications for an individual's personal malicious purposes."). Common law malice is "behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communication was made." *Southeastern Tidewater,* 246 Va. at 276 (citing *Smalls*, 241 Va. at 55); *see also Larimore,* 259 Va. at 573 ("The question is not as to the truth or falsity of the communication, or whether the action

7

taken by the defendant with reference thereto or based thereon was right or wrong, but whether the defendant in making the publication acted in good faith or was inspired by malice."). In other words, to defeat the qualified privilege, the plaintiff must prove that "the communication was actuated by some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff; or . . . that the communication was made with such gross indifference and recklessness as to amount to a wanton or wilful disregard of the rights of the plaintiff." *Southeastern Tidewater,* 246 Va. at 276 (quoting *Preston v. Land*, 220 Va. 118, 120 (1979)).

Here, there is no allegation that Defendant communicated the statements to an uninterested third-party; therefore, the issue is whether Defendant's statements were made with common-law malice. Plaintiff argues that key factual disputes exist as to whether Defendant's statements were actuated by malice or an otherwise reckless disregard for the truth, thereby removing any privilege that might otherwise apply to the statements. Specifically, Plaintiff alleges that Defendant's statements were made "intentionally, willfully, maliciously, out of personal spite and ill will against [Plaintiff] and with utter and conscious disregard of her rights." (Compl. ¶ 61). Plaintiff contends that Defendant's statement that she "misrepresented the severity" of her exchange with Taylor amounts to Defendant calling her a "liar." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. ¶¶ 49-50). Plaintiff also contends that Defendant's note in Plaintiff's file that she was terminated for "misconduct" implies that she violated Defendant's ethics policy. (*See* Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. ¶ 53).

Plaintiff's basic theory is that Defendant's decision to fire her was prompted by Defendant's need to cover its hasty decision to fire Taylor without an adequate

8

investigation and possible lawsuit by Taylor. Plaintiff argues that Defendant "never asked the right questions" during its "grossly inadequate" investigation of the exchange between Plaintiff and Taylor that ultimately led to Plaintiff's termination. (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. 2, ¶ 39). Plaintiff further argues that it was never her choice or desire to terminate Taylor, and Defendant failed to conduct an "independent fact-finding investigation into the facts related to the incident" between Plaintiff and Taylor before firing Taylor. (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. ¶ 26). According to Plaintiff, "while no one confirmed that any 'inappropriate language' was used, no one confirmed or denied the presence or absence of any cuss words, because no one was ever specifically asked about such words (one way or the other)." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. ¶ 39). Ultimately, Plaintiff alleges that when threatened with a possible lawsuit by Taylor, Defendant decided to fire Plaintiff to cover its tracks and, in the process of doing so, maliciously and recklessly made defamatory statements about Plaintiff.

While Plaintiff challenges the applicability of the qualified privilege to Defendant's statements, the crux of her argument is that the privilege should not apply because Defendant's statements were made maliciously. Plaintiff, however, fails to provide any clear and convincing evidence of malice on Defendant's part. The statements alleged by Plaintiff to be defamatory all concern Defendant's investigation into the exchange between Plaintiff and Taylor—all subject to the qualified privilege. Plaintiff has not provided sufficient evidence to overcome this hurdle, and Defendant's decision to investigate the incident between Plaintiff and Taylor and its conclusions based on its investigation cannot be second-guessed by the Court.

Ultimately, beyond her own allegations, Plaintiff does not give any basis for a reasonable jury to conclude that Defendant's statements were made with the requisite intent to defame Plaintiff. Defendant's statements were made internally in the wake of Taylor's denial that she used the "F-word" during her exchange with Plaintiff, the failure of any witnesses to corroborate the incident as Plaintiff presented it, and Plaintiff's failure to consistently report whether Taylor used the "F-word" during their exchange. Hence, while Plaintiff may find fault with Defendant's investigation and Defendant's decision to terminate her, such does not support a showing by clear and convincing evidence that Defendant acted with malice. Plaintiff has not demonstrated that Defendant's statements constitute actionable defamation.

Plaintiff also alleges that Defendant's statements constitute defamation *per se*. Under Virginia law, a statement is defamatory *per se* if it (1) imputes the commission of a crime involving moral turpitude to a party for which the party may be convicted; (2) imputes that a party is infected with a contagious disease which would exclude the party from society; (3) imputes that a party is unfit to perform the duties of the party's employment, or want of integrity in the discharge of those duties; or (4) prejudices a party in the party's profession or trade. *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713 (2006) (citing *Fleming v. Moore*, 221 Va. 884, 889 (1981)).

Here, Plaintiff claims that "the false statements all involve Ingle's and Lohmeyer's (and therefore WellPoint's) effort to falsely accuse Shaheen of professional incompetence and thus these statements constitute defamation *per se*." (Compl. ¶ 58). In this vein, Plaintiff must establish that there is "a nexus between the content of the defamatory statement and the skills or character required to carry out the particular occupation of the

10

plaintiff." *Fleming*, 221 Va. at 890. Furthermore, for a statement to be actionable under this test, it must be "necessarily hurtful in its effect upon plaintiff's business and must affect [the plaintiff] in his [or her] particular trade or occupation." *Id*. at 880-90.

As stated earlier, Defendant's statements in Plaintiff's personnel file and those made with respect to her termination have a logical basis in light of the circumstances. The record does not support a finding that the statements were negligently made, *see Suarez v. Loomis Armored US, LLC*, No. 3:10-CV-690, 2010 U.S. Dist. LEXIS 129335, at *6 (E.D. Va. Dec. 7, 2010) ("Private plaintiffs alleging defamation *per se* must prove that the defendant acted negligently by a preponderance of the evidence."), or made with malice, ill will, or any form of spite against Plaintiff. Defendant's statements which articulated the basis for Plaintiff's termination are all reasonable conclusions based on the facts brought to light: (1) not a single witness corroborated Plaintiff's account; (2) one person that Plaintiff alleged witnessed the incident was not even at work; (3) Plaintiff's inconsistent reports of the incident; and (4) Taylor's consistent denial of using the "F-word." While Defendant's decision might have been adverse to Plaintiff, it was reasonable. Based on the circumstances, Defendant's decision to terminate Plaintiff was rational and not negligently made. Again, there is no evidence that Defendant's statements were made with malice, ill will, or spite against Plaintiff.

In sum, Plaintiff cannot defeat the qualified privilege because she has failed to prove by clear and convincing evidence that Defendant's statements were made with common-law malice. Therefore, Plaintiff has failed to show the existence of a genuine dispute as to any material fact on the issue of whether Defendant's statements constitute defamation or defamation *per se*. Accordingly, the Court GRANTS Defendant's Motion for

Summary Judgment.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment, and DENIES AS MOOT Plaintiff's Motion to Compel and Defendant's Motion to Schedule Trial After June 1, 2012.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate order shall issue.

> _____/s/_____
> James R. Spencer
> Chief United States District Judge

ENTERED this  3rd  day of November 2011.